**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES -- GENERAL**

Case No.   **ED CV 26-1003-JFW(KES)**                                    Date:  March 20, 2026

Title:        Xiaonan Xu -v- Fereti Semaia, et al.

---

**PRESENT:**

**HONORABLE JOHN F. WALTER, UNITED STATES DISTRICT JUDGE**

| | |
|---|---|
| **Shannon Reilly** | **None Present** |
| **Courtroom Deputy** | **Court Reporter** |

**ATTORNEYS PRESENT FOR PLAINTIFFS:**            **ATTORNEYS PRESENT FOR DEFENDANTS:**
None                                                                              None

**PROCEEDINGS (IN CHAMBERS):**        **ORDER DENYING APPLICATION FOR TEMPORARY RESTRAINING ORDER [filed 3/3/26; Docket No. 3]**

On March 3, 2026, Petitioner Xiaonan Xu ("Petitioner") filed an Application for Temporary Restraining Order ("Application").  On March 6, 2026, Respondents Fereti Semaia, Ernesto Santacruz, Jr., Todd Lyons, Pamela Bondi, and Kristi Noem (collectively, "Respondents") filed their Opposition.  On March 10, 2026, Petitioner filed a Reply.  Pursuant to Rule 78 of the Federal Rules of Civil Procedure and Local Rule 7-15, the Court finds that this matter is appropriate for decision without oral argument.  The hearing calendared for March 23, 2026 is hereby vacated and the matter taken off calendar. After considering the moving, opposing, and reply papers, and the arguments therein, the Court rules as follows:

**I.        Factual and Procedural Background**

Petitioner was born in 1994 and is a native and citizen of the People's Republic of China. Petitioner entered the United States without inspection on approximately June 29, 2024, and was subsequently taken into custody by United States Immigration and Enforcement ("ICE").

On June 29, 2024, the United States Department of Homeland Security ("DHS") served Petitioner with a Notice to Appear, charging that he was subject to removal from the United States pursuant to Section 212(a)(6)(A)(i) of the Immigration and Nationality Act ("INA") because he is an immigrant "present in the United States without being admitted or paroled, or who arrived in the United States at any time or place other than as designated by the Attorney General," and released him from custody on an Order of Release on Recognition, which required him to appear periodically for check-ins at an ICE Field Office.  After he was released, Petitioner filed an application for asylum, and his removal proceedings remain pending before the Immigration Court.

Initials of Deputy Clerk __sr_

According to Petitioner, he diligently complied with all reporting obligations imposed by ICE, worked to support himself, and attended daily English as a Second Language ("ESL") classes offered by the community.  On July 10, 2025, Petitioner was involved in an altercation with an Uber driver.  According to Respondents, that incident led to Petitioner being charged with felony battery against a peace officer in violation of California Penal Code § 242, misdemeanor disorderly conduct – intoxicated drugs/alcohol in violation of California Penal Code § 647(f), and misdemeanor vandalism – defacing property in violation of California Penal Code § 594(a)(1).  According to Petitioner, those charges remain pending and no conviction has been entered against him.  On that same day, DHS issued a Warrant for Arrest of Alien (Form I-200) and an Immigration Detainer – Notice of Action (Form I-247A), which is addressed to the Alhambra City Jail and states that Petitioner "is subject to the detainer provision of the Laken Riley Act and is required to be effectively and expeditiously taken into custody by DHS pursuant to 8 U.S.C. § 1226(c)(3)."

On October 25, 2025, Petitioner's mother filed a Form I-730, Refugee/Asylee Relative Petition on his behalf after her asylum application was granted.

On December 4, 2025, ICE re-detained Petitioner when he appeared at an ICE Field Office for a routine check-in.  In the Record of Deportable/Inadmissible Alien (Form I-213) completed on that day, it states that "ERO Los Angeles served [Petitioner] with Form I-200. [Petitioner] will remain in ICE ERO custody pending his immigration proceedings due to his qualifying charges falling under the Laiken Riley Act."  At the time he was detained, Petitioner informed the ICE officer that he was scheduled to appear for a court hearing related to his criminal charges on December 9, 2025.  According to Petitioner, the ICE officer advised Petitioner that ICE would transport him to criminal court for that hearing and that if the criminal court dismissed the charges against him or if he was not convicted, ICE would release him.  However, on December 9, 2025, ICE failed to transport him to the scheduled court hearing, causing him to miss the appearance.  As a result, a bench warrant was issued against him.

Petitioner has not been given a bond hearing.  According to Petitioner, although he requested a custody redetermination pursuant to 8 C.F.R. § 1236 on January 23, 2026, Petitioner's counsel withdrew the request after the Immigration Judge determined that he could not adjudicate the issue.

On March 3, 2026, Petitioner filed a Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241 ("Petition"), alleging causes of action for: (1) unlawful detention in violation of the INA, 8 U.S.C. § 1226(a); (2) violation of Due Process; and (3) violation of INA – request for relief pursuant to *Maldonado Bautista*.

## II.    Legal Standard

The standard for issuing a TRO and preliminary injunction under Federal Rule of Civil Procedure 65 is the same.  *Six v. Newsom*, 462 F. Supp. 3d 1060, 1067 (C.D. Cal. 2020) (citation omitted); *see also Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001) (noting that a TRO and preliminary injunction involve "substantially identical" analysis).  Like a preliminary injunction, a TRO is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief."  *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008).

Initials of Deputy Clerk __sr__

Under *Winter*, a plaintiff seeking a TRO must establish four elements: "(1) a likelihood of success on the merits, (2) that the plaintiff will likely suffer irreparable harm in the absence of preliminary relief, (3) that the balance of equities tip in its favor, and (4) that the public interest favors an injunction." *Wells Fargo & Co. v. ABD Ins. & Fin. Servs., Inc.,* 758 F.3d 1069, 1071 (9th Cir. 2014) (*citing Winter*, 555 U.S. at 20). Courts in this circuit also employ "an alternative 'serious questions' standard, also known as the 'sliding scale' variant of the Winter standard" (*Fraihat v. U.S. Immigr. & Customs Enf't*, 16 F.4th 613, 635 (9th Cir. 2021)), in which the four *Winter* elements are "balanced, so that a stronger showing of one element may offset a weaker showing of another." *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011). Under this approach, a TRO may be warranted where there are "'serious questions going to the merits' and a hardship balance . . . tips sharply toward the plaintiff," and so long as the other *Winter* factors are also met. *Id.* at 1132.

The Ninth Circuit distinguishes between "mandatory" and "prohibitory" injunctions. *Hernandez v. Sessions*, 872 F.3d 976, 997–98 (9th Cir. 2017). Prohibitory injunctions maintain the status quo, preventing further constitutional violations. *Id.* at 997. By contrast, mandatory injunctions go further, ordering "a responsible party to 'take action.'" *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 879 (9th Cir. 2009) (*quoting Meghrig v. KFC W., Inc.*, 516 U.S. 479, 484 (1996)). A mandatory injunction "'goes well beyond simply maintaining the status quo [and is thus] . . . particularly disfavored.'" *Id.* (*quoting Anderson v. United States*, 612 F.2d 1112, 1114 (9th Cir. 1980)). Accordingly, the Ninth Circuit has held that mandatory injunctions "should not be approved in the absence of a risk of 'extreme or very serious damage.'" *Hernandez*, 872 F.3d at 997 (*quoting Marlyn Nutraceuticals, Inc.*, 571 F.3d at 879). Mandatory injunctions are most likely to be appropriate when "the status quo . . . is exactly what will inflict the irreparable injury upon complainant." *Id.* (*quoting Friends for All Children, Inc. v. Lockheed Aircraft Corp.*, 746 F.2d 816, 830 n.21 (D.C. Cir. 1984)).

## III.    Discussion

In his Application, Petitioner seeks an Order from this Court: (1) ordering Petitioner's immediate release from Respondents' custody; (2) in the alternative, ordering Respondents to provide Petitioner with a bond hearing before an immigration judge within seven days; (3) ordering Respondents to return Petitioner's personal belongings, including his work authorization card and identity documents; (4) upon release, prohibiting Respondents from imposing conditions of supervision more restrictive than those previously in place, including the imposition of electronic monitoring, absent a hearing consistent with due process; (5) enjoining Respondents from transferring, re-arresting, or re-detaining Petitioner absent lawful process, including a pre-deprivation hearing before a neutral decisionmaker at which Respondents establish by clear and convincing evidence that detention is appropriate to prevent his flight or to protect the public; and (6) requiring Respondents, should they choose to conduct such a hearing, to provide Petitioner with reasonable advanced notice of time and place of the hearing.

In this case, the Court concludes that Petitioner has not met his burden to establish that he is likely to succeed on the merits, or to show serious questions going to the merits, of his claims. *Winter*, 555 U.S. at 22. The statutory and regulatory framework governing immigration detention is complex. "Where an alien falls within this statutory scheme can affect whether his detention is mandatory or discretionary, as well as the kind of review process available to him if he wishes to

Initials of Deputy Clerk __sr__

contest the necessity of his detention." *Prieto-Romero v. Clark*, 534 F.3d 1053, 1057 (9th Cir. 2008) ("To determine whether Congress has authorized his detention, we must first identify the statutory provision that purports to confer such authority on the Attorney General.  This requires that we locate Prieto–Romero within the complex statutory framework of detention authority provided by Sections 236 and 241 of the Immigration and Nationality Act, codified at 8 U.S.C. §§ 1226 and 1231); *see also Jennings v. Rodriguez*, 583 U.S. 281, 289 (2018) (holding that Section 1226(c) "carves out a statutory category of aliens who may *not* be released under § 1226(a)") (emphasis in original); *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1196 (9th Cir. 2022) (holding that Section 1226 "provides the general process for arresting and detaining aliens who are present in the United States and eligible for removal"); *Lopez v. Garland*, 631 F. Supp. 3d 870, 877 (E.D. Cal. 2022) (noting that "essentially all district courts that have considered the issue agree that prolonged mandatory detention pending removal proceedings, without a bond hearing, will – at some point – violate the right to due process") (quotation omitted); *Doe v. Becerra*, 732 F. Supp. 3d 1071, 1079 (N.D. Cal. 2024) ("[D]ue process protections do not disappear simply because mandatory detention under Section 1226(c) is at least initially permissible").

In his Application, Petitioner largely argues that his liberty interest has been infringed and he has been deprived of due process because he has not been provided with a bond hearing as required pursuant to 8 U.S.C. § 1226(a).  However, Respondents argue that Petitioner's detention is not pursuant to Section 1226(a) and, as a result, he is not a member of the *Bautista v. Santacruz* Bond Eligible Class.  Instead, Respondents argue that Petition is subject to mandatory detention pursuant to Section 1226(c)(1)(E) (the "Laken Riley Act") because Petitioner was arrested on July 10, 2025, for the felony offense of battery against a peace officer.[1]  In his Reply, Petitioner does not dispute that his detention is pursuant to Section 1226(c)(1)(E), does not dispute that he was arrested for the felony offense of battery against a peace officer, and does not dispute any of the evidence put forth by Respondents.  In addition, Petitioner fails to address the status of his criminal case, the issue of whether individuals detained pursuant to Laken Riley Act are eligible to be released from detention on bond, and, if so, whether based on the facts of his case, he would be eligible to be released from detention on bond.  As a result, on the record before it, the Court cannot conclude that Petitioner has met his burden to establish that he is likely to succeed on the merits, or to show serious questions going to the merits, of his claims

Accordingly, Petitioner's Application must be denied. *See Garcia v. Google, Inc.*, 786 F.3d 733 (9th Cir. 2015) ("Because it is a threshold inquiry, when a plaintiff has failed to show the likelihood of success on the merits, we need not consider the remaining three *Winter* elements") (citation modified).

## IV.    Conclusion

For all of the foregoing reasons, Petitioner's Application is **DENIED**.  To the extent that Petitioner contends he is entitled to additional relief, he may seek such relief through his Petition

---

[1]  Section 1226(c)(1)(E) provides that "[t]he Attorney General shall take into custody any alien" who is present in the United States without being admitted or paroled and "is charged with, is arrested for, is convicted of, admits having committed, or admits committing acts which constitute the essential elements of any . . . assault of a law enforcement officer."

Initials of Deputy Clerk  _sr_

pending before the Magistrate Judge.

IT IS SO ORDERED.

Initials of Deputy Clerk  sr